# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

No. 25-CV-4104 (RER)
No. 25-CV-5168 (RER)

_____

THOMAS J. MELVILLE

VERSUS

GROSS POLOWY LLC

_____

**MEMORANDUM & ORDER**

_____

**RAMÓN E. REYES, JR., District Judge:**

*Pro se* appellant Thomas J. Melville ("Melville" or "Appellant") appeals from two orders of the United States Bankruptcy Court for the Eastern District of New York entered in his chapter 7 case, *In re Melville*, No. 1-25-41823-jmm (Bankr. E.D.N.Y.) (the "Bankruptcy Case").

The first is a June 16, 2025 order (the "Stay Relief Order"), which granted Melville relief from the automatic stay to permit him to present his defenses to a foreclosure sale in state court and denied all other relief requested in his motion, principally, a stay of state court proceedings concerning the property known as 276 Foster Road, Staten Island, New York (the "Property"), and vacatur of an in rem order entered in a co-owner's separate bankruptcy case. (No. 25-CV-4104, ECF No. 1-2). The second is a July 24, 2025 order (the "Certification Order"), which denied Melville's request to certify a direct appeal of the Stay Relief Order to the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 158(d)(2). (No. 25-CV-4104, ECF No. 1-4).

Appellee Gross Polowy LLC ("Gross Polowy"), the law firm that represents the secured creditor in the underlying foreclosure action, opposes both appeals. (No. 25-CV-4104, ECF No. 4 ("Appellee's Br.")). On October 30, 2025, the Court directed the parties to address both appeals in a single set of briefs (No. 25-CV-5168, ECF No. 8), and the Court accordingly resolves both appeals in this Memorandum & Order.

After carefully reviewing the record, and for the reasons set forth herein, the Stay Relief Order is affirmed; the appeal in No. 25-CV-4104 is dismissed in part for lack of subject matter jurisdiction; the appeal in No. 25-CV-5168 is dismissed for lack of appellate jurisdiction, and, to the extent it is construed as a renewed request for certification of a direct appeal, the request is denied; and Melville's renewed requests for a stay of the state eviction proceedings are denied.

## BACKGROUND

I.    The Loan, Default, and Foreclosure Action

On August 29, 2012, Melville executed a note in the principal amount of $351,648.00 in favor of Wall Street Mortgage Bankers Ltd. d/b/a Power Express.[1] (Appellee's Br. at 2; No. 25-CV-4104, ECF No. 4-1). The same day, Melville and Deanna Rosado ("Rosado") executed a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc., as nominee for the lender, which was recorded in the Office

---

[1] The following facts are drawn from the records on appeal transmitted by the Bankruptcy Court, the parties' briefs and the exhibits attached thereto, and publicly filed court records of the Foreclosure Action and the related bankruptcy cases, of which the Court may take judicial notice. *See, e.g.*, *Levy v. Maggiore*, 48 F. Supp. 3d 428, 438 (E.D.N.Y. 2014) (collecting cases). Citations to the docket of the Bankruptcy Case appear as "Bankr. ECF No. _."

2

of the Richmond County Clerk on September 10, 2012. (Appellee's Br. at 2; No. 25-CV-4104, ECF No. 4-2). The mortgage was assigned several times between 2014 and 2023 (ultimately to TIAA, FSB, which later merged into EverBank, N.A.) and the loan is serviced by LoanCare, LLC ("LoanCare"). (Appellee's Br. at 2–3; No. 25-CV-4104, ECF Nos. 4-3, 4-4; No. 25-CV-4104, ECF No. 1-4 at 1–2).

Melville and Rosado defaulted on the loan on November 1, 2014. (Appellee's Br. at 3). On February 23, 2016, the lender's predecessor commenced a foreclosure action in the Supreme Court of the State of New York, Richmond County, under Index Number 135132/2016 (the "Foreclosure Action"). (*Id.* at 3–4; No. 25-CV-4104, ECF No. 4-5). Melville answered the complaint on March 21, 2016. (Appellee's Br. at 4; No. 25-CV-4104, ECF No. 4-6). Gross Polowy thereafter substituted in as the foreclosure plaintiff's counsel. (Appellee's Br. at 4; No. 25-CV-4104, ECF No. 4-7). By order entered February 14, 2019, the state court granted summary judgment to the foreclosure plaintiff, struck Melville's answer, and appointed a referee to facilitate the foreclosure sale.[2] (No. 25-CV-4104, ECF No. 4-8). The state court entered a judgment of foreclosure and sale on September 9, 2022 (the "Foreclosure Judgment"). (Appellee's Br. at 4; No. 25-CV-4104, ECF No. 4-9).

---

[2] Appellee's brief states that summary judgment was granted on "February 4, 2018." (Appellee's Br. at 4). The order itself—Exhibit H to the brief—bears the stamp "FILED: RICHMOND COUNTY CLERK 02/14/2019," and recites that it was signed at an I.A.S. Term held "on the 4 day of February" 2019. (No. 25-CV-4104, ECF No. 4-8 at 2). The Court therefore uses the 2019 dates; the discrepancy is immaterial to the disposition of these appeals.

II.      The Serial Bankruptcy Filings and the In Rem Order

What followed was a series of bankruptcy petitions, each filed on the eve of a scheduled foreclosure sale of the Property. On February 8, 2023, one day before a scheduled sale, Melville filed a chapter 7 petition, No. 23-40440-jmm, which was dismissed on April 10, 2023 for failure to file a complete voluntary petition. (Appellee's Br. at 4–5; No. 25-CV-4104, ECF No. 4-11). On July 26, 2023, again one day before a rescheduled sale, Melville filed a second chapter 7 petition, No. 23-42632-jmm, which was dismissed on September 11, 2023, also for failure to file a complete petition. (Appellee's Br. at 5; No. 25-CV-4104, ECF No. 4-12). On January 9, 2024, two days before another scheduled sale, Melville filed a chapter 13 petition, No. 24-40103-jmm. (Appellee's Br. at 5; No. 25-CV-4104, ECF No. 4-13). That case was dismissed on April 29, 2024. (No. 25-CV-4104, ECF No. 7 at 2; Appellee's Br. at 5; No. 25-CV-4104, ECF No. 4-13).

On September 10, 2024, two days before yet another scheduled sale, Rosado, Melville's co-mortgagor, filed a chapter 7 petition, No. 1-24-43721-jmm (the "Rosado Case"). (Appellee's Br. at 5; No. 25-CV-4104, ECF No. 4-14). In the Rosado Case, LoanCare moved for relief from the automatic stay and for in rem relief as to the Property. (No. 25-CV-4104, ECF No. 7 at 3). On December 26, 2024, the Bankruptcy Court entered an order (the "In Rem Order") modifying the automatic stay pursuant to 11 U.S.C. § 362(d)(1) "to permit Movant, its agents, assigns, or successors in interest, to exercise their rights and remedies available under applicable law as to the Collateral," and granting in rem relief pursuant to section 362(d)(4). (No. 25-CV-4104, ECF No. 7 at 3–4; No. 25-

4

CV-4104, ECF No. 1-4 at 2). The In Rem Order provides that, "pursuant to 11 U.S.C. § 362(d)(4), if recorded in compliance with applicable State laws governing notices of interests or liens in real property, this Order shall be binding in any other bankruptcy case purporting to affect the Collateral that is commenced not later than two (2) years after the date of entry of this Order; except that a debtor in a subsequent bankruptcy case may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing." (No. 25-CV-4104, ECF No. 7 at 4). The In Rem Order was recorded in the Office of the Richmond County Clerk on January 23, 2025, as Land Document Number 970573. (Appellee's Br. at 5–6; No. 25-CV-4104, ECF No. 4-15).

III.    <u>Melville's 2025 Petition, the Motion, and the Stay Relief Order</u>

On April 14, 2025, three days before the next scheduled foreclosure sale, Melville filed the chapter 7 petition commencing the Bankruptcy Case.  (No. 25-CV-4104, ECF No. 1-1 at 1; No. 25-CV-4104, ECF No. 1-4 at 2). The foreclosure sale went forward on April 17, 2025. As the referee reported to the state court, the Property was "sold . . . to the third-party Foster 5454 BH LLC, for the sum of $612,000.00 that being the highest sum bid"; the referee "made, executed and delivered to such purchaser a good and sufficient deed of conveyance for the mortgaged premises sold"; and the sale generated "surplus funds in the amount of $15,808.41." (No. 25-CV-4104, ECF No. 4-10 (Referee's Report of Sale)).

On May 13, 2025, Melville filed an application for an order to show cause in the Bankruptcy Case (the "Motion"), which the Bankruptcy Court understood to request "an order staying eviction from the property known as 276 Foster Road, Staten Island, NY

10309 . . . and to set aside a prior order entered on December 26, 2024, in a chapter 7 case filed by Deanna Rosado, Case No. 1-24-43721-jmm, granting LoanCare, LLC relief from the automatic stay and in rem relief." (No. 25-CV-4104, ECF No. 1-4 at 2; Bankr. ECF No. 14). The Bankruptcy Court held a hearing on May 30, 2025.

On June 16, 2025, the Bankruptcy Court entered the Stay Relief Order, which provides that "the automatic stay in effect pursuant to 11 U.S.C. § 362(a) is lifted to the extent that Debtor can present whatever defenses he has in opposition to the foreclosure sale in the state court that has jurisdiction over the foreclosure action," and that "all other relief requested in the Motion is denied." (No. 25-CV-4104, ECF No. 1-2).

IV.      The Certification Request and the Certification Order

On June 24, 2025, Melville filed a notice of appeal from the Stay Relief Order, styled as an appeal "to the Second Circuit." (No. 25-CV-4104, ECF No. 1-4 at 2).[3] Two days later, on June 26, 2025, he filed an application requesting certification of a direct appeal to the Second Circuit pursuant to 28 U.S.C. § 158(d)(2). (No. 25-CV-4104, ECF No. 1-4 at 2). The Bankruptcy Court observed that, under Federal Rule of Bankruptcy Procedure 8006(b), it retained jurisdiction "to hear and determine the Debtor's request for certification until July 24, 2025," and it ruled on the request that day. (No. 25-CV-4104, ECF No. 1-4 at 1–2).

---

[3] Both of Melville's notices of appeal were styled as appeals to the Second Circuit. Absent certification under 28 U.S.C. § 158(d)(2) and authorization by the court of appeals, however, an appeal from a final order of the bankruptcy court lies to the district court under 28 U.S.C. § 158(a)(1), and each notice was accordingly transmitted to, and docketed in, this Court. (No. 25-CV-4104, ECF No. 1; No. 25-CV-5168, ECF No. 1).

6

In the Certification Order, the Bankruptcy Court denied certification on two grounds. First, it found the request procedurally deficient: "But for identifying the order from which he appeals, Debtor's request for certification fails to include all other information required by Rule 8006(f)(2)," and "proof of service of the request has not been filed on the docket." (No. 25-CV-4104, ECF No. 1-4 at 3). Second, it found the statutory criteria unsatisfied: "based on the record of the case, the Court does not believe (i) the Order involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the Order involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the Order may materially advance the progress of the bankruptcy case." (*Id.*).

V.    The Appeals

The appeal from the Stay Relief Order was transmitted to the Court on July 25, 2025, and docketed as No. 25-CV-4104. (No. 25-CV-4104, ECF No. 1). On August 20, 2025, Melville filed a second notice of appeal in the Bankruptcy Case, again styled as a "[n]otice of [a]ppeal to the United States Court of Appeals for the Second Circuit," this time from the "final order judgment on case file # 1-24-43721-jmm above by Hon. Judge Jill Mazer-Marino ECF #38 (Memorandum and Order Concerning Debtor's Application Requesting Certification of Direct Appeal to the Second Circuit Court of Appeals) denial decree signed the day of 24th, month of July, year 2025." (No. 25-CV-5168, ECF No. 4 at 4). That appeal was transmitted to the Court on September 15, 2025, and docketed as No. 25-CV-5168. (No. 25-CV-5168, ECF No. 1).

7

In No. 25-CV-5168, Melville moved for a stay of "enforcement of the judgment and/or foreclosure sale pending appeal" pursuant to Federal Rule of Bankruptcy Procedure 8007. (No. 25-CV-5168, ECF No. 4 at 1). Gross Polowy opposed. (No. 25-CV-5168, ECF No. 6). The Court heard the parties in person on October 30, 2025, and denied the motion. (No. 25-CV-5168, ECF No. 8).

Melville filed an "Appeal Summary Brief" on December 8, 2025, and a second "Appeal Summary Brief" on January 20, 2026.[4] (No. 25-CV-4104, ECF No. 3 ("Appellant's Br."); No. 25-CV-4104, ECF No. 7 ("Appellant's Reply")). Melville's submissions argue that: (1) the In Rem Order is void as to him because he "was intentionally not served with the in rem motion or order" in the Rosado Case, in claimed violation of Federal Rules of Bankruptcy Procedure 7004(a) and 9014 (Appellant's Br. at 5); (2) "[a]s a result of the [April 14, 2025] bankruptcy filing, the foreclosure sale of the property . . . [was] statutorily stayed despite the Dec 26, 2024 order" (*id.* at 6); (3) the Foreclosure Judgment was procured through "extrinsic fraud," chiefly because Gross Polowy was never validly substituted as counsel of record in the Foreclosure Action under N.Y. C.P.L.R. §§ 321 and 2309 (*id.* at 6–8; Appellant's Reply at 4–8); and (4) the Court should "vacate a judgment or order based on 'extrinsic fraud,'" "set aside nunc pro tunc the summary

---

[4]  Melville's December 8, 2025 brief was docketed in No. 25-CV-4104 bearing the caption of No. 25-CV-5168, and the same brief was filed in No. 25-CV-5168. (No. 25-CV-5168, ECF Nos. 9, 10). His January 20, 2026 reply was likewise filed in both cases. (No. 25-CV-4104, ECF No. 7; No. 25-CV-5168, ECF No. 11). Consistent with the Court's October 30, 2025 directive that the parties' briefs "address the issues raised in both cases" (No. 25-CV-5168, ECF No. 8), the Court considers all of the parties' submissions in resolving both appeals. Gross Polowy's brief was docketed twice in No. 25-CV-4104 (No. 25-CV-4104, ECF Nos. 4, 5); the duplicate was withdrawn by letter dated January 19, 2026 (No. 25-CV-4104, ECF No. 6).

judgment order of Febuary [sic] 04, 2019," order "all action set forth by the foreclosure sale to be ordered fraudulent and restored to the pre-foreclosure sale of April 17th 2025 including the transfer of deed and assignment of mortgage," and stay pending residential holdover proceedings in the Civil Court of the City of New York, Richmond County, under Index Numbers LT-302796-25/RI and LT-302797-25/RI (Appellant's Br. at 6; Appellant's Reply at 1–2). Gross Polowy responds that the Bankruptcy Court properly denied a stay, that in rem relief was properly granted under sections 105(a) and 362(d)(4)(B), and that review of the Foreclosure Judgment is barred by the *Rooker-Feldman* doctrine and res judicata. (Appellee's Br. at 7–18).

## DISCUSSION

I.      The Court Has Jurisdiction over the Appeal from the Stay Relief Order, but Not over the Appeal from the Certification Order

   A.   The Stay Relief Order Is Final and Properly Before the Court

As a threshold matter, the Court addresses its jurisdiction and the scope of these appeals. District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case," and "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case" that "yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37–38 (2020). The Stay Relief Order resolved Melville's Motion in its entirety, and Melville filed his notice of

9

appeal within fourteen days of its entry. Fed. R. Bankr. P. 8002(a)(1). The appeal in No. 25-CV-4104 is therefore properly before the Court.[5]

Because Melville proceeds *pro se*, the Court liberally construes his pleadings and briefs, "reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (citation omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Melville's June 24, 2025 notice of appeal designates a single ruling: the Stay Relief Order entered in his own case. (Bankr. ECF No. 33; No. 25-CV-4104, ECF No. 1-4 at 2). The Court's review in No. 25-CV-4104 is accordingly limited to that order. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995) (a notice of appeal "must designate the judgment, order, or part thereof appealed from," and the failure to mention an order in the notice "bars" review of it); *In re Dana Corp.*, 412 B.R. 53, 59 (S.D.N.Y. 2008) ("The Court has jurisdiction to review only those bankruptcy court orders 'designated' in the Notice of Appeal."). Neither the In Rem Order nor the state court's Foreclosure Judgment is independently before the Court, although Melville devotes most of his briefing to both. The Court addresses each in turn.

---

[5]  Only a person "aggrieved" by a bankruptcy court's order—one "directly and adversely affected pecuniarily" by it—may appeal. *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997) (citation omitted); *see also In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011). The Stay Relief Order granted in part relief that Melville himself requested at the May 30, 2025 hearing—leave to present his defenses in state court. (No. 25-CV-4104, ECF No. 1-4 at 2). The Court therefore reviews the order only insofar as it denied the balance of the relief Melville sought.

B. The Certification Order Is Not Appealable, and the Court Declines to Certify a <u>Direct Appeal</u>

The appeal docketed as No. 25-CV-5168 stands on different footing. As the Court observed at the October 30, 2025 conference, that appeal challenges "the Bankruptcy Court's order denying certification of a direct appeal to the Second Circuit Court of Appeals." (No. 25-CV-5168, ECF No. 8). The Court concludes that it lacks jurisdiction over such an appeal.

Section 158(d)(2) authorizes a direct appeal from the bankruptcy court to the court of appeals only where two conditions are met: the bankruptcy court, the district court, or the bankruptcy appellate panel certifies that one of three statutory circumstances exists, "and . . . the court of appeals authorizes the direct appeal of the judgment, order, or decree." 28 U.S.C. § 158(d)(2)(A); *see Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007) ("This court may in its discretion exercise, or decline to exercise, that jurisdiction."). An order declining to certify is not among the "final judgments, orders, and decrees" made appealable by section 158(a)(1): it resolves no dispute over the parties' rights, but merely declines to endorse a particular appellate path, leaving the appeal to proceed in the ordinary course. Unlike the stay-relief adjudication held final in *Ritzen*, an order declining certification neither "alters the status quo" nor "fixes the rights and obligations of the parties." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015). *Cf. Ritzen*, 589 U.S. at 44 ("The concept of finality cannot stretch to cover, for example, an order resolving a disputed request for an extension of time." (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015))); *see also In re Pawlak*, No. DKC 14-2839, 2015 WL 1523017,

11

at *1–2 (D. Md. Apr. 1, 2015) (appellant "provided no authority to suggest that orders of the Bankruptcy Court denying a motion to file an interlocutory appeal . . . are reviewable on appeal to the district court," and "reversal of [the] decision to decline to issue an interlocutory appeal certificate would not necessarily result in the questions receiving appellate review because the [court of appeals] could still decline to hear the appeal"); *cf. Webb v. Driver*, 507 F. App'x 284, 286 (4th Cir. 2013). The appeal in No. 25-CV-5168 is therefore dismissed for lack of appellate jurisdiction.

The Court has also considered the August 20, 2025 notice as a renewed request for certification of a direct appeal. Under Federal Rule of Bankruptcy Procedure 8006(b), "a matter remains pending in the bankruptcy court for 30 days after the first notice of appeal concerning that matter becomes effective"; "[a]fter that time, the matter is pending in the district court," and "[o]nly the court where the matter is pending . . . may certify a direct appeal to a court of appeals." Fed. R. Bankr. P. 8006(b), (d). The matter has been pending in the Court since the appeal was docketed, so the request is properly directed here.[6]

So construed, the request is denied. The Second Circuit has explained that it is "most likely to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or

---

[6] A party's request for certification "must be filed within 60 days after the judgment, order, or decree is entered." Fed. R. Bankr. P. 8006(f)(1). Melville's original request, filed June 26, 2025, was timely, and the Bankruptcy Court resolved it on the final day of the thirty-day period during which the matter remained pending before that court. (No. 25-CV-4104, ECF No. 1-4 at 1–2); Fed. R. Bankr. P. 8006(b). A renewed request filed August 20, 2025 would be untimely under Rule 8006(f)(1).

because conflicting decisions have created confusion) or where [it] find[s] it patently obvious that the bankruptcy court's decision is either manifestly correct or incorrect." *Weber*, 484 F.3d at 161. None of the section 158(d)(2)(A) circumstances are present. The application of sections 362(b)(20) and 362(d)(4) to a recorded in rem order is governed by the statutory text and presents no unsettled question of law, no conflict among decisions, and no matter of public importance. Courts to have applied section 362(b)(20) to recorded in rem orders have enforced them uniformly. *See, e.g.*, *In re Alakozai*, 499 B.R. 698, 704 (B.A.P. 9th Cir. 2013) (a recorded order under section 362(d)(4) "binds any party asserting an interest in the affected property, including every non-debtor, co-owner, and subsequent owner of the property"; the wife was therefore bound by the order entered in her husband's prior case, and the trustee's sale conducted the day she filed her own petition was valid). An immediate appeal could not "materially advance the progress of the case," 28 U.S.C. § 158(d)(2)(A)(iii), because this Memorandum & Order resolves the underlying appeal today. Melville's recourse, if he is dissatisfied with the Court's judgment, is an appeal to the Second Circuit as of right under 28 U.S.C. § 158(d)(1).

Finally, to the extent the August 20, 2025 notice, which references the Rosado Case by docket number, is construed instead as an attempt to appeal the In Rem Order itself, it fares no better. A notice of appeal from a bankruptcy court order "must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). The In Rem Order was entered December 26, 2024; a notice of appeal filed August 20, 2025, nearly eight months later, is untimely

13

many times over, and it was in any event filed in the wrong case. The Court therefore may not review the In Rem Order by that route either.

II.     The Bankruptcy Court Did Not Abuse Its Discretion in Granting Only Limited Relief <u>from the Automatic Stay</u>

A. <u>Standard of Review</u>

On appeal, a district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). A bankruptcy court's decision to grant, deny, or condition relief from the automatic stay "may be overturned only for an abuse of discretion." *In re Bogdanovich*, 292 F.3d 104, 109 (2d Cir. 2002) (citing *Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 142 (2d Cir. 1999)); *see Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990) (the "decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge" (citation omitted)). A bankruptcy court abuses its discretion when its decision "rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or "cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). The burden was on Melville, as the party seeking relief, "to make an initial showing of cause." *Bogdanovich*, 292 F.3d at 110 (citing *In re Mazzeo*, 167 F.3d at 142).

B. <u>No Automatic Stay Barred the April 17, 2025 Foreclosure Sale</u>

Melville's central contention is that the filing of his petition on April 14, 2025 triggered an automatic stay under section 362(a), such that "the foreclosure sale of the

property . . . [was] statutorily stayed despite the Dec 26, 2024 order," and that the Bankruptcy Court was therefore required to "impose" the stay and unwind the sale and its consequences. (Appellant's Br. at 6 (capitalization altered); Appellant's Reply at 2–4; *see* No. 25-CV-4104, ECF No. 1-2 (describing the Motion as seeking "to impose the automatic stay with respect to a state court foreclosure action")). The Court disagrees.

The filing of a bankruptcy petition ordinarily operates as a stay of, among other things, "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). But Congress has withdrawn that protection in the circumstances presented here. Where an order granting in rem relief under section 362(d)(4) has been entered as to particular real property, and that order has been recorded in compliance with applicable state law, the filing of a later petition "does not operate as a stay . . . of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order." 11 U.S.C. § 362(b)(20). The statute affords the later debtor one avenue of relief: he "may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing." *Id.*

Each statutory element is satisfied on this record. First, an order under section 362(d)(4) was entered: the In Rem Order, by its terms, granted in rem relief "pursuant to 11 U.S.C. § 362(d)(4)." (No. 25-CV-4104, ECF No. 7 at 4). Second, the In Rem Order was "recorded in compliance with applicable State laws governing notices of interests or liens in real property," 11 U.S.C. § 362(d)(4); it was recorded in the Office of the Richmond

15

County Clerk on January 23, 2025. (No. 25-CV-4104, ECF No. 4-15; Appellee's Br. at 5–6). Third, the In Rem Order concerns the Property, the same real property against which the lien was enforced. (No. 25-CV-4104, ECF No. 7 at 3–4). Fourth, Melville commenced the Bankruptcy Case on April 14, 2025, well within two years of the In Rem Order's December 26, 2024 entry. (No. 25-CV-4104, ECF No. 1-1 at 1). By operation of section 362(b)(20), Melville's petition did not stay the April 17, 2025 foreclosure sale of the Property.[7]

Melville's remedy was instead exactly the one the Code prescribes: a motion in his own case for relief from the recorded In Rem Order "based upon changed circumstances or for other good cause shown, after notice and a hearing." 11 U.S.C. § 362(b)(20). That is, in substance, the Motion he filed on May 13, 2025, and he received what the statute guarantees: notice and a hearing. (No. 25-CV-4104, ECF No. 1-4 at 2). The Bankruptcy Court heard Melville's arguments on May 30, 2025, declined to find cause to suspend enforcement of the In Rem Order, and granted him relief from the stay to litigate his defenses in the state court. (*Id.*; No. 25-CV-4104, ECF No. 1-2). On such a motion, "the debtor bears the burden of persuasion, and correlative risk of nonpersuasion, that there are 'changed circumstances or other good cause.'" *In re Town & Country Event Ctr., LLC*, 673 B.R. 445, 452 (Bankr. E.D. Cal. 2025). Melville failed to carry that burden with either:

---

[7] Melville argues that the one-year bar imposed upon the dismissal of his chapter 13 case, No. 24-40103-jmm, did not prohibit his filing a new chapter 7 petition on April 14, 2025. (Appellant's Reply at 2–3). The Court assumes, without deciding, that the petition was properly filed. The point does not advance Melville's position: even a properly filed petition does not stay enforcement of a lien against the Property within two years of a recorded in rem order. 11 U.S.C. § 362(b)(20).

16

he asserted no change in his financial circumstances and no prospect of curing the default, but pressed only the service objection and the fraud contentions addressed below, grounds that do not bear on whether enforcement of a recorded in rem order should be suspended in a subsequent case. Nothing in that disposition rests on an error of law or a clearly erroneous finding of fact.

C. The In Rem Order Is Not Subject to Collateral Attack in This Appeal

Melville insists that the In Rem Order cannot bind him because he "was intentionally not served with the in rem motion or order" in the Rosado Case, in claimed violation of Federal Rules of Bankruptcy Procedure 7004(a) and 9014. (Appellant's Br. at 5 (capitalization altered); Appellant's Reply at 4).

As a threshold matter, the In Rem Order is not properly before the Court. It was entered in a different case, in which Melville was not the debtor, and any appeal from that order was due within fourteen days of its entry in December 2024. Fed. R. Bankr. P. 8002(a)(1). Melville's June 24, 2025 notice of appeal designates only the Stay Relief Order entered in his own case. (Bankr. ECF No. 33). *See Shrader*, 70 F.3d at 256; *In re Dana Corp.*, 412 B.R. at 59. This appeal is not a vehicle for collaterally attacking a separate, long-final order entered in another debtor's case.

In any event, Melville's service objection misapprehends how section 362(d)(4) operates. Section 362(d)(4) provides: "If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the

17

court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing." In rem relief, in other words, runs with the property, not the parties: it is "relief affecting all entities claiming to hold an interest in the property, regardless of whether they sought bankruptcy protection." *In re Montalvo*, 416 B.R. 381, 388 (Bankr. E.D.N.Y. 2009). And the Code protects persons who, like Melville, were strangers to the earlier case not through party-style service, but through the very mechanism the statute supplies: "a nondebtor whose rights are affected by an order granting in rem relief could obtain relief from the in rem provisions upon a showing of good cause or changed circumstances." *Id.* Melville invoked that mechanism. He moved, with notice and a hearing, to set the In Rem Order aside; the Bankruptcy Court considered and rejected his arguments while preserving his ability to defend in state court.[8] (No. 25-CV-4104, ECF No. 1-4 at 2; ECF No. 1-2). The Court discerns no abuse of discretion in that ruling.

> D. The Denial of Further Injunctive Relief Was Within the Bankruptcy Court's <u>Discretion</u>

What remained of the Motion was Melville's request to stay eviction from the Property and any closing on the sale. In evaluating a request to stay enforcement

---

[8] Even if the merits of the In Rem Order were reviewable here, the record amply supports relief under section 362(d)(4). Five petitions were filed on the eve of five scheduled foreclosure sales—four by Melville, one by Rosado—and each of Melville's first three cases was dismissed for failure to prosecute the bankruptcy process. (Appellee's Br. at 4–6; No. 25-CV-4104, ECF No. 4-11 to 4-14). A bankruptcy court may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone," *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014) (citation omitted), and "[t]he timing and sequencing of the filings" are important to that inquiry, *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009); *see also In re Lemma*, 394 B.R. 315, 324 (Bankr. E.D.N.Y. 2008) (describing the movant's burden under section 362(d)(4)).

18

proceedings, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Each factor cut against Melville. First, his likelihood of success on the merits was foreclosed by section 362(b)(20), *see supra* Section II.B, and his fraud-based challenges to the Foreclosure Judgment lay beyond the Bankruptcy Court's jurisdiction, as that court correctly recognized. (No. 25-CV-4104, ECF No. 1-4 at 2). Second, any injury to Melville was not irreparable in the relevant sense: the Stay Relief Order expressly preserved his ability to "present whatever defenses he has in opposition to the foreclosure sale in the state court." (No. 25-CV-4104, ECF No. 1-2). Third, a stay would have substantially injured a stranger to the bankruptcy: by the time the Motion was filed, the Property had passed to a third-party purchaser for $612,000.00, and the referee had "executed and delivered to such purchaser a good and sufficient deed of conveyance." (No. 25-CV-4104, ECF No. 4-10). Fourth, the public interest in the finality of judicial sales would have been disserved by enjoining a consummated sale that no statutory stay had barred. *See In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997) ("We have long recognized the value of finality in judicial sales."); *Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160, 163 (2d Cir. 1991) (notwithstanding allegations of fraud, "the important policy of finality in foreclosure sales must prevail").

19

Rather than leave Melville without recourse, the Bankruptcy Court granted him relief from the stay so that he could litigate his grievances in the only forum competent to hear them. That disposition was not an abuse of discretion; on this record, it was the correct response to the relief sought.

In sum, the Stay Relief Order rests on no legal error and no clearly erroneous factual finding, and it falls within the range of permissible decisions. The Stay Relief Order is therefore affirmed.

III.    The *Rooker-Feldman* Doctrine Deprives the Court of Jurisdiction to Vacate the Foreclosure Judgment

Liberally construed, Melville's briefs principally ask the Court to "vacate a judgment or order based on 'extrinsic fraud'" pursuant to N.Y. C.P.L.R. § 5015(a)(3), to "set aside nunc pro tunc the summary judgment order of Febuary [sic] 04, 2019," and to order "all action set forth by the foreclosure sale to be ordered fraudulent and restored to the pre-foreclosure sale of April 17th 2025 including the transfer of deed and assignment of mortgage." (Appellant's Br. at 6 (capitalization altered); *see* Appellant's Reply at 1, 5–8). The Court lacks jurisdiction to grant any of that relief.

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). There are "four requirements for the application of Rooker-Feldman": "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of

20

injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Here, all four requirements are satisfied. First, Melville lost in state court: his answer was stricken, summary judgment was granted against him, and the Foreclosure Judgment was entered on September 9, 2022. (No. 25-CV-4104, ECF Nos. 4-8, 4-9). Second, the injuries of which he complains, the loss of the Property through the foreclosure sale and the eviction proceedings that followed, flow directly from the Foreclosure Judgment. A third party's actions count as injury caused by the judgment when they are "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. The sale was conducted, and the third-party purchaser took title, pursuant to the Foreclosure Judgment, and the holdover proceedings enforce the rights that judgment conferred; neither injury exists independent of it. *See Ward v. Bankers Tr. Co. of Cal., N.A.*, No. 09-CV-1943 (RRM) (LB), 2011 WL 1322205, at *6 (E.D.N.Y. Mar. 29, 2011) ("The genesis of Ward's alleged injury—sale and dispossession of her home—followed directly from the state-court judgments of foreclosure and eviction. The state-court judgments did not simply ratify a prior possession and sale."). Third, Melville expressly invites the Court to "set aside nunc pro tunc the summary judgment order" and to undo "all action set forth by the foreclosure sale" (Appellant's Br. at 6 (capitalization altered)), relief that would require the Court to

21

review and reject the state court's judgment. Fourth, the Foreclosure Judgment was entered nearly three years before either of these proceedings commenced in 2025.

Melville's invocation of fraud does not alter the analysis. The Second Circuit has held that *Rooker-Feldman* bars a federal plaintiff's request to vacate a state foreclosure judgment as fraudulently procured, because adjudicating such a claim "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427; *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 288–89 (E.D.N.Y. 2024) ("[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." (quoting *Davis v. JP Morgan Chase Bank*, No. 14-CV-6263 (KMK), 2016 WL 1267800, at *6 (S.D.N.Y. Mar. 30, 2016))). A motion under C.P.L.R. § 5015(a)(3) is addressed to the court that rendered the judgment: here, the Supreme Court, Richmond County. *See In re Richmond*, 513 B.R. 34, 40 (Bankr. E.D.N.Y. 2014) ("The remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a)(3)), and not by another plenary action collaterally attacking that judgment." (quoting *St. Clement v. Londa*, 8 A.D.3d 89, 90 (1st Dep't 2004))). The Bankruptcy Court told Melville the same thing (that "only the state court had jurisdiction to modify that Judgment") and the Stay Relief Order expressly cleared his path to seek that relief in Richmond County. (No. 25-CV-4104, ECF No. 1-4 at 2; ECF No. 1-2).

22

Accordingly, to the extent the appeals seek vacatur of the Foreclosure Judgment, the April 17, 2025 foreclosure sale, or the ensuing transfer of title, the appeals are dismissed for lack of subject matter jurisdiction.[9]

IV.        Melville's Renewed Requests to Stay the State Eviction Proceedings Are Denied

Finally, Melville asks the Court to stay two residential holdover proceedings pending in the Civil Court of the City of New York, Richmond County, under Index Numbers LT-302796-25/RI and LT-302797-25/RI. (Appellant's Reply at 1–2; Appellant's Br. at 1).

This is not Melville's first such request. On October 14, 2025, he moved under Federal Rule of Bankruptcy Procedure 8007 for "a stay of enforcement of the judgment and/or foreclosure sale pending appeal." (No. 25-CV-5168, ECF No. 4 at 1 (capitalization altered)). The Court heard the parties in person on October 30, 2025, and denied the motion "for the reasons stated on the record." (No. 25-CV-5168, ECF No. 8). Nothing in Melville's briefs supplies a basis to revisit that ruling. The governing factors remain those set out in *In re World Trade Center Disaster Site Litigation*, 503 F.3d at 170, and the first remains dispositive: Melville has not shown a likelihood of success on any claim within the Court's jurisdiction. The holdover proceedings, moreover, were commenced after the Stay Relief Order issued and were never presented to the Bankruptcy Court; the Court reviews the rulings the Bankruptcy Court actually made and does not entertain

---

[9] Because the Court lacks subject matter jurisdiction over this aspect of the appeals, it does not reach Gross Polowy's alternative argument that res judicata bars Melville's challenges to the Foreclosure Judgment. (Appellee's Br. at 17–18).

23

freestanding requests for injunctions against ongoing state proceedings. *See In re Gravel*, 6 F.4th 503, 516 n.2 (2d Cir. 2021) ("[O]ur role is to review what the bankruptcy court did, not to survey options."); *In re Corso*, 328 B.R. 375, 386 (E.D.N.Y. 2005) (declining to consider an argument "not raised before the Bankruptcy Court").[10] The renewed requests are denied without prejudice to whatever remedies state law affords Melville in the Civil Court.

## CONCLUSION

For the foregoing reasons, the June 16, 2025 Stay Relief Order of the Bankruptcy Court is affirmed, and to the extent the appeal docketed as No. 25-CV-4104 seeks vacatur of the state court's Judgment of Foreclosure and Sale, the April 17, 2025 foreclosure sale, or the ensuing transfer of title, it is dismissed for lack of subject matter jurisdiction. The appeal docketed as No. 25-CV-5168 is dismissed for lack of appellate jurisdiction; construed as a renewed request for certification of a direct appeal pursuant to 28 U.S.C. § 158(d)(2), the request is denied. Melville's renewed requests for a stay of the pending state eviction proceedings are denied.

The Clerk of Court is respectfully directed to enter judgment in both cases, close both cases, mail a copy of this Memorandum & Order to Appellant at his address of record, and note the mailing on the docket of each case.

---

[10] Furthermore, the Anti-Injunction Act independently bars the relief Melville seeks: a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. No statutory exception applies here.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: July 7, 2026
Brooklyn, New York